**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHITUNDA TILLMAN SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-CV-04625 |
| | ) | |
| NAVIENT SOLUTIONS, LLC; USA | ) | Judge John J. Tharp, Jr. |
| FUNDS; IQOR INC.; | ) | |
| ALLIESINTERSTATE LLC; ALLIED | ) | |
| INTERSTATE LLC; EXPERIAN; | ) | |
| EQUIFAX; and TRANS UNION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Chitunda Tillman Sr., brings this suit relating to the repayment of his student loans and has filed a complaint that brings to mind the observation of French mathematician Blaise Pascal: "I didn't have time to write a short letter, so I wrote a long one instead."[1] The 178-page (including exhibits) amended pro se complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1682 et seq., the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq. The defendants consist of Navient Solutions, LLC ("NSL"), a loan servicer; United Student Aid Funds ("USA Funds"), a financial support non-profit corporation; and Trans Union, LLC, Experian Information Solutions, Inc., and Equifax Information Services, LLC, three consumer reporting agencies ("CRAs").[2] The plaintiff

---

[1] Pascal, Blaise, Provincial Letters, Letter XVI at 275 (Dec. 4, 1656) (available through Google Books; books.google.com/books).

[2] The plaintiff has settled claims with two other defendants, both debt collection agencies: iQor and Allied Interstate, LLC.

alleges that NSL and USA Funds have wrongfully found him in default of student loans that were either forgiven or paid off and that also had been consolidated using a fraudulent promissory note. In addition, Tillman alleges that the CRAs failed to adequately investigate the circumstances surrounding the resulting deduction in his credit score. Before the Court are two joint motions to dismiss: one filed by NSL and USA Funds, and one by the three CRAs. For the reasons detailed below, both motions are granted with prejudice.

## BACKGROUND

The plaintiff, a graduate of Chicago State University, took out a series of student loans during the course of his education. First Amended Complaint ("FAC") Attach. B at 1; FAC Attach. C at 1, ECF No. 40. The plaintiff received at least one federal Perkins loan, FAC Attach. B at 1, and a series of seven Stafford loans under the Federal Family Education Loan Program (FFELP). FAC Attach. D at 2. The FAC, while somewhat opaque, appears to assert that the loans have been forgiven, or, alternatively, that they have been satisfied in full. The FAC includes documentation of the plaintiff's requests for cancellation benefits with respect to his Perkins loan due to the nature of his post-graduation employment as a teacher. FAC Attach. A. In May 2007, the plaintiff successfully canceled this loan. *Id.* Attach. B at 1.

The FFELP loans, on the other hand, were consolidated by an electronic application and promissory note in 2006. FAC Attach. D. The plaintiff defaulted on this consolidated loan ten years later, in April 2016. FAC Attach C at 1. The plaintiff alleges that this promissory note was forged and that he never signed it electronically, thus rendering the loan consolidation invalid. He contends in the alternative that the loans should have been forgiven regardless and seeks a declaratory judgment indicating that the loan is satisfied. Based on the alleged fraud perpetrated in the execution of the promissory note, the plaintiff alleges that NSL, the loan servicer on the

FFELP loans,[3] and USA Funds, the guaranty agency on the loans, violated the FCRA, FDCPA, TILA, and TCPA. The plaintiff also alleges violations of the same four statutes by the three CRAs for their failures to remove the default from his credit report.

## DISCUSSION

When considering a motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiffs' complaint. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012). To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court will first address the motion to dismiss filed by the CRAs before turning to the motion to dismiss filed by NSL and USA Funds.

### I. Equifax, Experian, and Trans Union's Motion to Dismiss

The plaintiff alleges that the CRAs "failed in their fiduciary responsibility to investigate and report true and accurate [credit] reports." FAC 2.[4] In September 2017, the plaintiff reached out to Trans Union, Experian, and Equifax demanding that the derogatory mark on his credit report resulting from the student loan default be removed immediately. FAC Attach. D.1 at 1. According to the plaintiff's letter, the derogatory mark was improper because his loans had been forgiven. *Id.* Equifax and Trans Union both investigated the loans in question and reported back to the plaintiff that the loan servicers considered the loans to be open and past due. *Id.* at 20-21;24. Although the FAC does not include documentation of a response from Experian, the plaintiff does not allege

---

[3] The original servicer was Sallie Mae, which spun off part of its business into NSL, a new corporate entity, in 2014.

[4] Because the paragraph numbering of the FAC is inconsistent, the pin cites included with respect to the FAC are page numbers.

any facts to suggest that Experian did not respond with a similar investigation. In 2018, the plaintiff reached out to the CRAs again, this time demanding the "original signed account or contract" relating to the student loans in question. *Id.* at 25-26. It appears that the CRAs responded with a copy of the promissory note, which the plaintiff claims is fraudulent.[5] The plaintiff asserts in his FAC that because the loans were forgiven and the consolidation premised upon a fraudulent promissory note, it was incumbent upon the FACs to remove the demerit on his credit score. Because they did not, the plaintiff argues that Equifax, Experian, and Trans Union violated the FCRA, the FDCPA, and TILA, and TCPA.[6] For the reasons detailed below, the plaintiff has failed to plausibly state a claim with respect to each of the four statutes.

### A. FCRA

The language of the FAC invokes the requirement in the FCRA that CRAs must "assure maximum possible accuracy" in their credit reports. 15 U.S.C. § 1681e(b). To that end, CRAs must conduct "a reasonable reinvestigation" when a consumer disputes information contained in a credit report. 15 U.S.C. § 1681i(a)(1)(A). The plaintiff alleges that the CRAs failed both their duty to investigate and their duty to include only factually accurate information in their credit reports.

---

[5] The plaintiff at times seems to suggest that the promissory note provided to him cannot be the valid original contract because it does not contain a "wet-note" signature. Contracts, however, may be signed electronically and are not rendered void solely by the lack of a "wet-ink" signature. *See* 15 USC § 7001. Here, the promissory note contains an electronic signature, so the plaintiff must allege a factual basis sufficient to support his claim that the signature was not his.

[6] The CRAs, in addition to the substantive claims addressed *infra*, also argue that the FAC should be dismissed on Rule 8 grounds because the complaint is "unreasonably verbose and disorganized." Mem. in Supp. of Joint Mot. to Dismiss 4, ECF No. 69. Although the complaint is quite lengthy and at times difficult to decipher, the general gist of the plaintiff's arguments is discernible—as evidenced by the logical and concise motions to dismiss filed by the defendants. Moreover, pro se complaints are given broad leeway and are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Consequently, the Court declines to dismiss the complaint under Rule 8.

With respect to the first claim, the record included with the FAC provides no indication that any of the CRAs failed to adequately reinvestigate the information included in the plaintiff's credit reports. The plaintiff himself has included documentation of the results of the investigations undertaken by Equifax and Trans Union, which were consistent with the original information included in his credit reports. In other words, Equifax and Trans Union initially reported the plaintiff's loans to be in default, and their reinvestigations confirmed those findings. Because the plaintiff has alleged no facts to suggest that the reinvestigations were unreasonable, his claims with respect to § 1681i(a)(1)(A) must fail.

Similarly, the results of Trans Union's and Equifax's reinvestigations make clear that the CRAs did not fail their duty to provide factually accurate credit reports. The CRAs' investigations revealed that the lenders confirmed that the plaintiff's loans were in default, and thus the CRAs' credit reports accurately indicated the status of the loans. Moreover, as detailed *infra*, the plaintiff's arguments that the loans have been satisfied or forgiven have no merit—a conclusion that further buttresses the factual accuracy of the reports.

Even if the plaintiff were successful, however, in showing that the loans were not valid because they had been canceled or satisfied, he still would not have had an FCRA claim against the CRAs at the time of filing because, as the Seventh Circuit recently ruled, CRAs cannot be held liable for the inclusion on a credit report of a loan that is disputed on legal grounds. *See Denan v. Trans Union LLC*, 959 F.3d 290, 296 (7th Cir. 2020) (holding that a question of the validity of a consumer's defense to a debt "is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA") (internal citations and quotations omitted). The plaintiff's credit report, therefore, cannot be deemed inaccurate based on an argument about whether the debt reported is legally valid until a court has ruled in his favor

with respect to his legal obligations on the debt. Put simply, the FCRA does not "impose . . . a duty upon consumer reporting agencies . . . to determine the legality of a disputed debt." *Id.* at 295. As a result, regardless of the Court's conclusion with respect to the plaintiff's liability on the loans, the CRAs were under no obligation to make a determination as to the legality of the disputed debt. The FAC thus fails to state claim per § 1681e(b).

### B. FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The statute defines "debt collectors" to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Here, the plaintiff has alleged no facts that suggest that credit reporting agencies, such as Equifax, Experian, and Trans Union, engage in debt collection efforts on behalf of other creditors. These CRAs are not in the business of debt collection on behalf of third parties, as demonstrated by the fact that iQor and Allied Interstate, LLC., the two dismissed defendants, were contracted for debt collection purposes in this case. As a result, the plaintiff has not adequately alleged that the CRAs qualify as debt collectors under the FDCPA, which means that he has not adequately alleged an FDCPA cause of action against the CRAs.

### C. TILA

The TILA attempts to increase transparency for consumers by imposing certain requirements upon "various financial institutions and other firms engaged in the extension of consumer credit." 15 U.S.C. § 1601(a). Much like the shortcomings of its FDCPA claims, the FAC includes no facts alleging that the CRAs are consumer credit lenders—and there is nothing to suggest that the CRAs in this case ever extend credit to consumers. The TILA claims against the CRAs must, therefore, also be dismissed.

### D. TCPA

The TCPA places certain restrictions on the use of automatic telephone dialing systems or telephone calls using artificial or prerecorded voices. 47 U.S.C. § 227. The FAC alleges that "Defendants used an automatic dialing system or a prerecorded or artificial voice" in calls to the plaintiff. FAC 18. The FAC then proceeds to ask the Court to "[i]magine Navient Solutions, LLC, IQOR, Allied Interstate[,] USA Funds[] calling you everyday[,] taking turns threatening you[,] making phone calls harassing you everyday, [or] every other day for a year[,] as an example writing letters threatening you." FAC 19. It appears, therefore, that the plaintiff's collective use of "defendants" in the context of his TCPA claims refers not to the CRAs, but rather to NSL, USA Funds, and the two defendants with whom he has already settled. The FAC includes no facts supporting a TCPA claim against the CRAs, but even if it did, those claims still must fail as explained in Part II(D), *infra*, and are therefore dismissed.

### II. NSL and USA Funds' Motion to Dismiss

The plaintiff's claims against NSL and USA Funds all stem from his allegations that his student loans have been forgiven or satisfied, or alternatively, that the loan consolidation executed

in 2006 was fraudulent due to a forged promissory note. The Court will address in turn the plaintiff's claims under the FCRA, FDCPA, TILA, and TCPA.[7]

### A. FCRA

NSL and USA Funds rightfully point out that the FCRA does not provide a "private right of action under 15 U.S.C. § 1681s-2(a), which prohibits furnishing inaccurate information to credit reporting agencies." *Zahran v. Bank of Am.*, 15-CV-1968, 2016 WL 826402 at *3 (N.D. Ill. Mar. 3, 2016) (citations omitted). The law does, however, allow a private right of action when lenders, after receiving notice from a CRA that they might have provided inaccurate information, do not conduct a reasonable investigation and correct any misinformation revealed therein. *See* 15 U.S.C. § 1681s-2(b). To prevail on such a claim, the plaintiff must show that: "(1) he notified a CRA that it was reporting inaccurate information; (2) the CRA relayed the plaintiff's claim to the information furnisher; and (3) the furnisher failed to investigate and correct the allegedly inaccurate information in question." *Jackson v. Experian Info. Sols., Inc.*, 15-CV-11140, 2016 WL 2910027 at *3 (N.D. Ill. May 19, 2016). For a § 1681s-2(b) claim to survive at the motion to dismiss stage, the plaintiff must plausibly allege facts that could substantiate those three elements.

Here, the plaintiff has adequately shown that he reached out to the CRAs to dispute the demerit on his credit report. FAC Attach. D1. He has not alleged that the CRAs notified NSL or USA Funds about his dispute of the debt, but he has shown that NSL was made aware of the dispute, primarily as a result of direct communications from the plaintiff himself. *See, e.g.,* FAC

---

[7] NSL alleges that the plaintiff's initial complaint contained two forged documents (only one of which was included as an attachment to the complaint) purportedly showing that the FFELP loans had been canceled or forgiven. Because the plaintiff subsequently withdrew the document and does not rely on it in the FAC, the Court need not draw any conclusions about its veracity in order to rule on the motions to dismiss. Nevertheless, the submission of this document by the plaintiff is disturbing. But for the dismissal of this case with prejudice on the merits, the Court would examine this matter in the context of a sanctions hearing.

Attach. F; FAC Attach. G. Mr. Tillman falls short, however, in failing to plausibly allege that NSL or USA Funds failed to investigate his claims in a reasonable fashion. *See Zahran*, 2016 WL 826402 at *4 ("Under § 1981s-2b, a creditor's obligation is to conduct an investigation after it receives notice from a credit reporting agency that a consumer has disputed a debt, and correct any errors that it finds; if it conducts a reasonable investigation and concludes that it has committed no reporting errors, it has nevertheless discharged its obligation, even if its conclusion is incorrect.") (citations omitted). Indeed, the FAC provides an extensive paper trail but it suggests, contrary to Mr. Tillman's argument, that NSL investigated the plaintiff's claims on at least two occasions and communicated the results of those investigations directly to the plaintiff, once in February 2018, FAC Attach. G, and again in June 2018. FAC Attach. F. Because the plaintiff has alleged nothing to suggest that those investigations were unreasonable, and if anything has alleged facts to the contrary, his FCRA claims against NSL and USA Funds must be dismissed.

Furthermore, even if the FCRA provided a private cause of action for furnishing inaccurate information to CRAs, the plaintiff's claims would still fail. The FAC does not allege any facts to substantiate his assertion that he did not default on his FFELP loans. He has shown no evidence that those loans were forgiven, as the only loan forgiveness documents included in the FAC relate to the separate Perkins loan that he successfully canceled. In the same vein, he has provided no evidence of complete payments made on the FFELP loans to suggest that the loan has been satisfied.

The only allegation that seemingly contradicts the results of NSL's investigations is his assertion that he did not sign the promissory note for the loan consolidation, but this allegation too misses the mark. The plaintiff, in an effort to illustrate disparities in the listed loan amounts across

multiple documents,[8] has included a letter from Sallie Mae dated April 24, 2006 that includes a loan consolidation disclosure statement and repayment schedule on the seven FFELP loans. FAC Attach. E at 4. By doing so, the plaintiff has unwittingly undermined his claim that the promissory note was fraudulent; this document makes clear that he was sent a letter detailing the consolidation in 2006. Presumably, had the consolidation been fraudulent, upon receipt of the letter in 2006, the plaintiff would have immediately reached out to contest the consolidation—but there is no indication that he did so.

Even if the consolidation was ineffective, moreover, the plaintiff would still be liable for the seven Stafford loans under their original terms. The loan consolidation did not create new loan obligations for the plaintiff out of thin air; instead, it aggregated the obligations of seven distinct loans into obligations organized under one combined loan. The plaintiff does not allege that the original seven loans were fraudulent or that he did not receive the funds disbursed by the loans. Nor does he adequately allege that the seven loans have been forgiven or satisfied in full. Thus, by

---

[8] These minor discrepancies the plaintiff identifies are also easily explained. For example, the plaintiff submits two charts comparing the amounts due on the seven loans in two separate documents. FAC 15 ("If the numbers don't match; you must detach! [Me from any obligation of this alleged debt that I don't owe.]"). The first document, the promissory note, is dated April 18, 2006, FAC Attach. D at 4, whereas the second document, a letter from Sallie Mae, is dated April 24, 2006. FAC Attach. E at 4. The two charts demonstrate that the seven loan amounts, while not identical, are all within a few dollars of one another (e.g., $771.99 in the first chart, and $772.88 in the second chart). These negligible differences are entirely consistent with approximately 8 days' worth of additional interest accrual at a 5-6% interest rate, and thus do not support any inference of nefarious conduct.

Similarly, the plaintiff argues that because different documents refer to different dates for the consolidation in April 2016, those discrepancies prove that the promissory note is fraudulent. The promissory note was executed on April 18, 2006; a letter with the consolidation disclosure and repayment schedule was sent to the plaintiff on April 24, 2006; and the consolidated loan was dispersed (i.e., the original seven loans were paid off and the new consolidated loan was created) on April 26, 2006. FAC Attach. D at 4; FAC Attach. E at 4; FAC Attach. E at 1. These dates reflect a normal course of business and an expected interim processing period between the submission of the promissory note and the execution of the loan.

his own admission and omission, regardless of the validity of the consolidation, the plaintiff remains liable for repayment on the loans he received, either per their original terms or the terms of the consolidation. Consequently, he has no basis for asserting that NSL and USA Funds wrongfully considered him in default.

In sum, the plaintiff has not adequately alleged facts to support an FCRA claim against NSL and USA Funds.[9]

### B. FDCPA

The plaintiff alleges that the defendant violated the FDCPA by repeatedly calling him and sending him letters relating to his alleged debt. But these claims fail for the same reason that his FDCPA claims against the CRAs fail; he has not adequately alleged that NSL and USA Funds are debt collectors as defined by the statute. The FDCPA expressly does not apply to people or entities trying to collect on "a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Sallie Mae serviced the plaintiff's loans through 2014, at which point NSL was created and took over the loans. The plaintiff did not default until 2016, which exempts NSL from "debt collector" status per the FDCPA; NSL's responsibility for the loans predates the plaintiff's default. Similarly, USA Funds' only involvement with the FFELP loans was as the guaranty agency. FAC Attach. E.1 at 2. The FDCPA also contains an exception from its definition

---

[9] NSL and USA Funds also argue that the plaintiff's FCRA claim is time-barred by the FCRA's statute of limitations, which requires the suit to be filed within two years of discovery of the violation. *See* 15. U.S.C. § 1681p. The defendants contend that the plaintiff discovered the purported violations in 2006 when Trans Union sent him the results of an investigation resulting from a dispute he had filed. FAC Attach. C.1. The Trans Union report, however, makes no mention of a loan consolidation, and in fact lists each of the seven loans separately. *Id.* at 6-8. Nonetheless, the FAC does include a loan consolidation disclosure statement and repayment schedule from Sallie May dated April 24, 2006, which suggests that the claim may in fact be time-barred. FAC Attach. E at 4. But because the FCRA claims must be dismissed on their substance, the Court need not resolve the statute of limitations issue.

of debt collectors when entities undertake activity that "is incidental to a bona fide fiduciary obligation." 15 U.S.C. § 1692a(6)(F)(i). Guaranty agencies like USA Funds are "in a fiduciary relationship with the Department of Education for the purpose of the Federal Family Education Loan Programs." *Seo v. Educ. Credit Mgmt. Corp.*, 15-CV-3703, 2016 WL 521065 at *2 (N.D. Ill. Feb. 9, 2016). As a result, USA Funds also cannot be "subject to the FDCPA because, as a guarantor acting in a fiduciary relationship with the Department of Education, it does not fall under the definition of a debt collector." *Id.* at *3.[10] Both NSL and USA Funds are therefore exempt from the plaintiff's FDCPA claims.

### C. TILA

Although the plaintiff's TILA claims against NSL and USA Funds, unlike those against the CRAs, do not run into the issue of whether the defendants are consumer credit lenders, they still are inadequately alleged on other grounds. The plaintiff argues that the defendants violated the TILA by not disclosing the original alleged promissory note bearing his signature,[11] fraudulently concealing material facts of the loan, and refusing to rescind the loan.  FAC 10.

The TILA, like the FDCPA, contains several carve-outs, including for "[l]oans made, insured, or guaranteed pursuant to a program authorized by [T]itle IV of the Higher Education Act of 1965 [20 U.S.C. 1070 et seq.]." 15 U.S.C. § 1603(7). The plaintiff's FFELP loans fall within this exception: "Congress enacted the Higher Education Act of 1965 . . . Among other things, the Act created the Federal Family Education Loan Program (FFELP), a system of loan guarantees meant to encourage lenders to loan money to students and their parents on favorable terms." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 640 (7th Cir. 2015) (cleaned up). The plaintiff

---

[10] Because none of the defendants qualify as debt collectors under the FDCPA, the Court need not determine whether the alleged conduct constitutes a violation of the statute.

[11] Discussed *supra* note 5.

has not, and cannot, adequately allege any facts to the contrary. *See Upshaw v. United States Dep't of Educ.*, CV 2:17-00164-SJO-E, 2017 WL 7156267 at *3 (C.D. Cal. Nov. 20, 2017) ("Because Plaintiff's loans are federally-insured student loans, the provisions of TILA . . . do not apply."). As such, his TILA claims against NSL and USA Funds are also dismissed.[12]

### D. TCPA

The plaintiff alleges that NSL and USA Funds violated the TCPA when they "used an automatic dialing system or a prerecorded or artificial voice" in their attempts to collect the money owed on the loans. FAC 18. Although the TCPA places restrictions on the use of automated telephone equipment, it contains an exception when the "call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). The FFELP loans in question are guaranteed by the United States, which means that even if the defendants used an automatic dialing system or prerecorded or artificial voice in their attempts to collect on the plaintiff's debt, those efforts were exempt from TCPA restrictions. The plaintiff has alleged no facts to the contrary, and as such, his TCPA claims against the defendants cannot survive NSL and USA Funds' motion to dismiss.[13]

\*　　\*　　\*

In sum, the plaintiff has failed to state a claim against any of the defendants. His FCRA, FDCPA, TILA, and TCPA claims are all insufficiently pleaded, and there are no grounds for a declaratory judgment that concludes that he has satisfied the terms of his student loans—even after

---

[12] Much like its FDCPA analysis, the Court need not reach the issue of whether the plaintiff has adequately alleged that the defendants' conduct violates the TILA.

[13] NSL and USA Funds argue that the claims also should be dismissed because the FAC does not specifically allege that the defendants used an automatic telephone dialing system to call the plaintiff on a cell phone without his consent. The Court, which has dismissed the TCPA claims on other grounds, need not wade into the case law in this area to determine how specific the plaintiff's factual allegations must be in that context.

nearly 280 pages of filings combined between his FAC and his response to the motions to dismiss. Further, and as the defendants note, in his response briefs, the plaintiff has not engaged with the substance of their legal arguments for dismissal. While the Court declines to dismiss the claims on that basis, the plaintiff's failure to respond to the substance of the defendants' arguments suggests that amendment of the complaint would be futile; having failed to meet the defendants' arguments once, there is no reason to believe that the plaintiff would be able to do so if given another opportunity. Consequently, the Court grants the defendants' motions to dismiss with prejudice pursuant to Rule 12(b)(6).

Date: June 15, 2020

John J. Tharp, Jr.
United States District Judge